Dr. Jane H. Sarrazin, a practicing dentist in New Orleans, sustained serious physical injuries when she fell while alighting *Page 476 
or just after alighting from the front platform of an electric streetcar of defendant, New Orleans Public Service, Inc. The accident occurred at about 8 o'clock on the night of January 19th, 1944, while the car was stopped at Holy Cross College, No. 4950 Dauphine Street.
Plaintiff charges that as she was about to step from the car by way of the front platform, and as the motorman was attempting to open the doors and lower the step to a horizontal position, the step did not descend to its proper position but remained elevated a few inches and that as she put her foot on it, her weight caused it to descend to its proper position, but that this caused a jolt with the result that she partially lost her balance. Apparently she thinks that this alone would probably not have caused her to fall but she says that the defendant company, which had provided a wooden bridge across a small gutter alongside the car tracks for the purpose of serving as an alighting platform, had so constructed it that it was so great a distance below the step of the car that, as she attempted to step to it from the step of the car, she, already off balance, was thrown to the ground and sustained the injuries on which she bases this claim. She says too that the defendant was negligent in erecting this bridge or alighting platform at a spot which was not properly illuminated by a street light, and on which the lights of the vestibule of the car cast the shadow of the open step. She charges also that the landing platform was uneven and that this was an additional danger to a passenger alighting at that spot.
Defendant denies all of the charges of negligence, and, in the alternative, avers that if it should be found that there was any negligence on its part, the true or proximate cause of plaintiff's fall was her own contributory negligence in failing to watch her step and in failing to properly balance herself while attempting to alight.
On these issues the matter went to trial in the Civil District Court and there was judgment in favor of defendant dismissing plaintiff's suit. She has appealed.
The spot at which the accident occurred is about a streetcar length from the pedestrian crossing at the corner. It is where the front end of the car comes to a stop when the rear end is at the pedestrian street crossing. The rails of the streetcar track are parallel with the side-walk and between the track and the side-walk there is a ditch or gutter so that it was necessary to construct a small alighting platform or bridge across this gutter from the street to the side-walk. This platform or bridge is composed of six heavy planks more than three inches in thickness and each a little more than twelve inches in width and, according to measurements taken under the supervision of the district judge, is 6 ft. 2 1/2 in. in width and 5 ft. 4 in. in length; the length being from the streetcar rails to the sidewalk. The nearest street light is at the corner near the center of the street and is 61 feet from this bridge or platform so that when there is a streetcar stopped, as this car was, this light projects the shadow of the car upon the platform. When the doors on the front end of the streetcar are opened and the step is in a horizontal position, the light inside the front vestibule of the streetcar illuminates most of this bridge but according to measurements which as we have said were made under the supervision of the district judge, throws a shadow of the step upon the bridge for a distance of 7 1/2 inches from the outer edge-of the step.
Plaintiff says that when the front doors were opened she placed her foot upon the step but that it had not completely descended to the horizontal position and that it went down under her weight for a few inches to the position in which it should have been, and that this threw her off balance, with the result that when she attempted to make the additional step to the ground, and unexpectedly found the height of that additional step greater than is customary, and was unable to see the landing platform because of the shadow upon it, she fell to the ground and sustained these injuries. She says too that a contributing factor was the unevenness of the platform.
As to the actual occurrence of the accident, she is the only witness in her own behalf. Before discussing the evidence of defendant as to the occurrence of the accident, we shall consider the shape, size and condition of the landing platform, its distance below the step of the car and the question of whether or not it was adequately lighted.
This bridge or landing platform is wide enough to extend sufficiently beyond the ends of the streetcar step to make it practically impossible for an alighting passenger to fail to step upon it if the car is stopped in its proper position. And there is no contention that this car was not so *Page 477 
stopped. One end of the bridge extends under the streetcar to the rail and the other to the paved portion of the side-walk, and is practically flush with that side-walk. From the photographs and the evidence we are convinced that it is as nearly perfect in construction as such a structure can be made.
Plaintiff's claim that the step was so high above the landing platform as to be dangerous is annihilated by the evidence. The measurements show that the distance from the step of the car to this platform is 14 3/4 inches, whereas the distance from the main vestibule floor of the car to the step is 14 inches. Thus there is a difference of only 3/4 of an inch between these two steps. And we are convinced that a step 14 3/4 inches high is not at all unusual. In fact, it is shown that when this car is at the corner of Canal and Rampart Streets, where thousands of persons board streetcars, this step is above the paving a distance of 16 inches, or nearly 2 inches more than it is above the platform to which plaintiff attempted to alight.
It is true that the evidence shows that the corner street light does project the shadow of the streetcar upon the platform but, on the other hand, it is shown conclusively that when the car doors are opened the vestibule light of the car completely illuminates the step except for a small distance extending 7 1/2 inches beyond the edge of the step. In alighting from a streetcar a passenger naturally steps a few inches forward and it would have been almost impossible for plaintiff to have put her foot upon the shaded portion of the platform even if she had attempted to do so. As she alighted there was extended before her a broad platform six feet wide and 3 or 4 feet in length beyond the shadow. She could not have failed to see it had she been careful to any extent at all. She claims that the platform was uneven and it does appear that as such wooden platforms usually are, the edges of one or two of the boards may have been from a quarter to a half inch above the boards alongside them. But these unevennesses, if we may call them such, were in a longitudinal direction and not across her path. Thus there was no danger of her stumbling over the edge of one of these boards.
The car was examined by an inspector shortly after the accident and was found to be without any defect in the mechanism which operates the doors and the steps. It was shown that if such a step is not defective, when the doors are open it can be in only the horizontal or correct position. Of course, as the doors are being opened the step is automatically being lowered, and if an alighting passenger should step upon the step before the doors are completely opened the step would not be in a horizontal position but would be descending to that position. And while there is no evidence in the record to show that that is what occurred here, it is quite possible that plaintiff might have attempted to step upon the step before the doors had been completely opened and thus she would have found the step descending rather than in its completely horizontal position.
At any rate, the record shows that there was nothing whatever defective about the step in question. We have grave doubt as to whether, as a matter of fact, that step had anything whatever to do with plaintiff's fall for although in her testimony she attempts to create the impression that she was thrown off balance by it, she very plainly says that she had placed both feet on the step which had descended to the correct position and had regained her balance before she attempted to step upon the landing platform. Note the following testimony by her:
"Q. If I remember your testimony correctly, you said as you put your left foot on the step of the car, the step jolted under the force of your left foot? A. I don't know about the force, but my weight pushed the step down.
"Q. And then you put your right foot on the step? A. Yes.
"Q. Did the step jolt when you put your right foot on the step? A. No, my left foot pushed the step down once and after that and when the right foot was there it was level.
"Q. All right, — after you had both feet on the step of the streetcar you then put your left foot on that landing platform or bridge? A. I don't know if it was the platform or not, but when I put my foot to the ground, account of the height there it threw me.
"Q. If I understand your testimony correctly, you don't know what you stepped on when you stepped from the step of the street car down to the ground, or to the bridge? You don't know what you stepped on? A. No, sir, I don't know what I stepped on. The car stopped and I got out *Page 478 
and was supposed to have a good landing. It was the height from the step to the ground that threw me.
"Q. You were holding on to that rod? A. Yes.
"Q. You know you had both feet on the step of that streetcar? A. Yes, both feet."
We have carefully read the record and cannot but conclude, as did the trial court, that there was no negligence whatever in the defendant.
The judgment appealed from is affirmed at the cost of appellant.
Affirmed.
WESTERFIELD, J., absent, takes no part.